*Court of Common Pleas, Dauphin County, May* 21*st*, 1866.

### SHOEMAKER *v.* MURRAY.

A court of equity has no power to enjoin a tax collector from selling property under a void or irregular warrant. The proper remedy is by action of trespass.

The clerk constitutes no part of an election board for the purpose of assessing taxes, and his absence will not make a tax-warrant void. An election board has the power to choose a secretary, and a tax-warrant signed by him, as such, is regular. When a tax was assessed, persons to collect, and a treasurer to receive it, appointed by an election board, before their successors were elected, a tax-warrant issued after such election, and before their successors were duly inducted, is regular.

BY THE COURT.—The complainant files his bill on the equity side of the court, asking that the respondent shall be restrained from selling his property under what is averred to be a pretended or irregular warrant for the collection of a bounty tax assessed on the citizens of the Third Ward of the city of Harrisburg. We have doubts of the equitable jurisdiction of this court over the subject, and are inclined to the opinion that the complainant should be left to his remedy by a common-law action, if the process in the hands of the respondent is void, or so irregular as not to justify the proceeding. The furthest the courts have gone in restraining a sale, is where a wife's property was levied on for the debts of her husband; the court of equity granted an injunction under the acts of 1848 and 1850 (Hunter's Appeal, 4 Wright, 194). It is spoken of as an exceptional case. As no question has been raised as to the jurisdiction of the court, and it is the desire of all parties that the validity of the warrant and right to sell should be determined, we will endeavor to decide on the points raised by the parties. The defendant justifies the seizure of the goods, and claims that it is his duty to sell them under his warrant, issued by the election board of the Third Ward of this city, for the collection of a bounty tax assessed by said officers,

under the act of March 25th, 1864, and its supplement of the 25th of August of the same year, relating to bounties for volunteers. That the election board of this ward had an undoubted right to assess the tax for the purpose indicated, is not to be questioned; it is provided for in the statute, and the power to so legislate has received the sanction of the highest judicial tribunal of the State. The tax, when assessed, is to be collected in the mode pointed out in relation to county rates and levies. But exception has been taken to the present proceeding, in this: First, the assessment was not resolved on and made by the election board. The clerks were not present, and took no part in the action. In our opinion, for a purpose of this character, they constitute no part of the " election board;" that consists of the two inspectors and the judge. The clerks merely keep proper minutes of the board's action when sitting to receive, count, and record the votes polled. The inspectors and judge are elected by the people of the proper district at the spring election, and are thus prepared for the performance of their duties at the next general election. The clerks are appointed by the respective inspectors, when the election is about to be held. The former have high and important judicial functions to perform, in receiving and rejecting votes; the latter have merely to record truly what the board of officers direct. They are invested with no judicial powers whatever. Both in powers, duties, and common parlance, the inspectors and clerks are designated the election board; the clerks act as subordinate officers. It is, therefore, the inspectors and judge to which the acts of Assembly relating to bounties, refer, by the expression, "board of election officers," and not to the clerks of election, who never were selected by the people of the township or district, but appointed by the respective inspectors. This tax was assessed by the designated officers. Second, it is said that the defendant, Murray, was not duly appointed; but the answer clearly shows that he had a majority of the votes of the board, to wit, two out of three, and it need not appear by which two he was elected. Third, the warrant was signed by A. F. Swartz, as secretary; whereas there is no such officer known, and no proof that he was elected. It would have been competent for this election board, when met for the purpose of imposing a tax, to have acted as an entirety, and all signed the proceedings. It was equally competent to select a president and secretary, and that is perhaps the more usual course, even when the board consists of a very small number. Such appears to have been the case here. Both the minutes kept, and the answer, show that Frank A. Murray was appointed president, and A. F. Swartz, secretary; and as secretary, Swartz was the proper person to authenticate the minutes, and although all three might have signed the warrant to the collector, commanding him to collect the tax, yet it could

[Shoemaker *v.* Murray.]

be done by the president and secretary, or either of them; all that it required was the signature of some officer of the board, to give it authenticity. Fourth, it is said that the election board which assessed this tax, was *functus officio* before the same was laid, and the warrant for its collection came from one who had ceased to be an officer. The answer shows that the board met towards the last of February, and resolved to assess and collect a tax of two per cent. on the adjusted valuation of property in the ward. The minutes are without date, but they prove that such was the resolution of the board, and to collect a capita tax of five dollars per head. The collector was appointed on the 10th of March. When the duplicate was made out, does not appear, but the warrant for its enforcement is dated the 10th of April. There can be no question but that the proper officers resolved to impose and collect this tax; they unquestionably constituted the election board at the time; they also properly appointed the collectors, as the election of new inspectors and judge did not take place until the 16th of March, six days after the appointment. Having done all of the judicial acts, imposed the tax, fixed the amount thereof, ordered it to be collected, and appointed an officer to collect, and a treasurer to receive it, they were, in my opinion, the proper persons to carry out the mere formal part, by issuing a warrant for its collection. For a purpose of that kind, they continued in office until their successors, the officers elect, were duly inducted. This, perhaps, could not be the case until an election was required to be held by the people, as that is the time they are to appoint clerks, and then all take the oath of office. The law clearly points out the time of appointing the clerks, and the regular order of the statute requires that all shall then be sworn, which must be done before entering upon the duties of their office. It cannot be that they must formally take the prescribed oath in anticipation of an election, merely to enable one of their number to authenticate a warrant for the collection of taxes. We consider the warrant regularly issued by competent authority, to collect a lawful tax, duly laid according to the proper adjusted valuation, and directed to a legally appointed collector; and therefore it is his duty to enforce payment of the tax, and to sell the property on failure to pay. Consequently, this court cannot enjoin the defendant from proceeding to sell on his warrant. The application for a special injunction is refused.

*Herr, for plaintiff.*

*Kunkel, for defendant.*